98 So.2d 202

**Lou Ellis HALL**

**v.**

**PIPE LINE SERVICE CORPORATION and St. Paul Mercury Indemnity Company.**

No. 42951.

April 1, 1957.

On Rehearing Nov. 12, 1957.

Claude F. Kammer, New Orleans, for appellant.

Gravel, Humphries, Sheffield & Mansour, Alexandria, Booth, Lockard, Jack & Pleasant, Shreveport, Dodd, Hirsch, Baker & Meunier, Baton Rouge, McKeithen, Mouser & McKinley, Monroe, Wood & Jackson, Leesville, White & May, H. Alva Brumfield, Baton Rouge, Raymond H. Kierr, New Orleans, W. T. McCain, Colfax, amici curiae.

Christovich & Kearney, A. R. Christovich, Sr., A. R. Christovich, Jr., New Orleans, for defendants, appellees and respondents.

HAMLIN, Justice ad hoc.

In the exercise of our supervisory control (Article 7, Sec. 11, Louisiana Constitution of 1921, LSA), we granted a writ from a judgment of the Court of Appeal, Parish of Orleans, 85 So.2d 706, which affirmed the judgment of the Twenty-fourth Judicial District Court, Division "B", Parish of Jefferson, State of Louisiana.

Plaintiff brought this workmen's compensation proceeding for permanent disability at the rate of $30 per week for a period not exceeding 400 weeks, $1,000 medical expenses, 12% penalties, attorney's fees, expert fees, interest, and costs. In the alternative, he prayed for permanent partial disability of $30 per week for 300 weeks.

The evidence shows that in the course of his employment as a pot fireman on pipe line construction, on June 15, 1953,

plaintiff severed and injured the Achilles tendon in the rear lower portion of his left leg above the heel. He was cut by the sharp edge of the tin top of a metal drum, which contained tar and weighed approximately 600 pounds. His duties consisted of opening these drums, transporting the tar to a boiler for melting, and keeping the tar at a consistency sufficiently liquid for pipe coating.

This injury necessitated an operation, which was performed by Dr. Lyon K. Loomis at Flint Goodridge Hospital. The cast placed on plaintiff's leg was changed on June 29, 1953 and removed on September 2, 1953, and Dr. Loomis prescribed special shoes. On September 30, 1953, Dr. Loomis referred plaintiff back to Dr. Jonah Washington Atkinson, who had treated him immediately after the operation, for observation. On October 3, 1953, Dr. Loomis wrote a letter to the effect that he thought plaintiff could return to work. He testified that he thought at the time it would be preferable for plaintiff to do light work. Dr. Atkinson last saw plaintiff on October 12, 1953, and at that time he was of the opinion that plaintiff could return to work. Plaintiff did not return to work. He consulted Dr. Blaise Salatich on October 23, 1953, and then consulted Dr. George C. Battalora on November 30, 1953.

Plaintiff brought the present proceeding in January, 1954, alleging in his petition that, as a direct result of the accident, he was suffering advanced osteoporosis of the bones of his left foot, with residual swelling, disfunction and causalgic pain, of a permanent nature. He further alleged that he was unable to perform the duties of the occupation in which he was engaged at the time of the accident.

Plaintiff's alleged wage was $62 per week, and it was stipulated that his employer had paid him compensation of $30 per week for sixteen weeks ($480), the last payment having been made about October 13, 1953. It was also stipulated that all medical bills had been paid.

The trial court dismissed plaintiff's suit.

The Court of Appeal affirmed the judgment of the trial court, stating that the record overwhelmingly demonstrated that the plaintiff could have returned to work at any time, had he been willing to do so.

In this Court, plaintiff prays for permanent disability payments, or, alternatively, for permanent partial disability payments, or, further alternatively, for 10% permanent partial loss of the use or function of a foot. He alleges that the lower courts were in error in their findings. The defendant employer and its insurance carrier urge that prior payments of Workmen's Compensation made during plaintiff's illness more than satisfied any requirements of the Workmen's Compensation Law, and that the judgments of the lower courts are correct.

▮ The evidence adduced at the time of trial definitely shows that plaintiff suffered some degree of permanent partial loss of the use or function of his left foot as a result of his accident. The testimony of Dr. Loomis is to the effect that he would place the disability between five and ten per cent of the foot. Dr. George C. Battalora testified as follows:

"The disability that I estimated on this case was about ten per cent loss of use of the left foot. I considered that would probably be permanent and I based this on the moderate thickening noted about the tendon achilles at the site of the severance."

Dr. Blaise Salatich, orthopedic surgeon and a witness for the plaintiff, examined the plaintiff on the morning of the trial. He testified that plaintiff had suffered a thirty per cent overall disability and based his opinion on the fact that one cannot move a heavy object without the full use of his legs and arms. He also stated that, in his opinion, plaintiff had suffered a twenty-five degree disability in dorsi and plantor flexion.

▮ From the above evidence, we think that plaintiff's degree of disability should be averaged.[1] Witnesses for the defendant testified to ten per cent, and the witness for the plaintiff testified to 25%. Therefore, an average would be 17.5%.

LSA–Revised Statutes, 23:1221 provides:

"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:"

(4) (g) "For the loss of a foot, sixty-five per centum of wages during one hundred and twenty-five weeks."

(4) (o) "In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member."

▮ The defendants deny that plaintiff's alleged wage was $62 per week. They aver that it was $54.60, but there is no proof in the record that their averments are correct. Plaintiff testified that he worked six days per week and received an hourly wage of $1.05 for his first forty hours worked per week and time and one-

---

1. The overwhelming weight of authority is that courts should give Workmen's Compensation Laws a liberal interpretation. Dyer v. Rapides Lumber Co., 154 La. 1091, 98 So. 677; Johnson v. Cabot Carbon Co., 227 La. 941, 81 So.2d 2; Coal Operators Casualty Co. v. Fidelity & Casualty Co. of New York, 223 La. 794, 66 So.2d 852.

half for all hours over that number. His wages would, therefore, average $62 or more, and we take as correct his allegation that he earned $62 per week.

■ The correct method for computing compensation for the permanent partial loss of use of the function of a member—here, the foot—is to take the proportion of the partial loss from 65% of the weekly wage and allow such amount as compensation for the number of weeks permitted for the total loss of the respective member. O'Connor v. American Mutual Liability Ins. Co., La.App., 87 So.2d 16. In the present matter, 65% of plaintiff's weekly wage amounts to $40.30, and 17.5%—average degree of disability, supra—of this amounts to $7.05. Since the above provisions of the Workmen's Compensation Law allow plaintiff this amount for a period of 125 weeks, his total allowance would be $881.25.

Plaintiff contends that he should be allowed permanent partial disability, in addition to the payments that have been voluntarily paid him by his employer. We find that he is in error in this contention, because it is stated in LSA–Revised Statutes, 23:1223:

"Where compensation has been paid under subdivisions (1), (2), or (3), of R.S. 23:1221, the amount of such payment shall be deducted from any compensation allowed under subdivision (4) thereof or under Sub-part C of this Part."

The above section was interpreted in the case of O'Connor v. American Mutual Liability Ins. Co., La.App., 87 So.2d 16, 25, as follows:

"An injured workman cannot recover compensation both for specific loss, such as a partial loss of the function of any member, and for temporary total disability. LSA–R.S. 23:1223 provides that where compensation has been paid under the disability provisions the amount of such payments shall be deducted from any compensation allowed for a specific loss, * * *" See, also, Franklin v. Louisiana Highway Commission, La.App., 152 So. 604.

■ Therefore, plaintiff's award for a 17.5% permanent partial loss of the use or function of his left foot is subject to a credit of $480, workmen's compensation previously paid him.

■ The penalty provisions of LSA–Revised Statutes, 22:658 do not apply to the present controversy, as plaintiff has not shown that his former employer acted in an arbitrary or capricious manner. Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695.

Since plaintiff is the successful litigant in this matter, he is entitled to attorney's fees. LSA–Revised Statutes, 23:1141; Hemphill v. Tremont Lumber Co., 209 La.

885, 25 So.2d 625. We find that $175 is a fair award.

For the reasons assigned, the judgments of the trial court and the Court of Appeal, Parish of Orleans, are annulled and set aside; and, it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Lou Ellis Hall, and against the defendants, Pipe Line Service Corporation and St. Paul Mercury Indemnity Company, for compensation at the rate of $7.05 per week for a period of 125 weeks, with legal interest on each weekly installment from its respective maturity date until paid, subject to a credit of $480 for workmen's compensation previously paid, and for all costs. It is further ordered, adjudged and decreed that the fee of plaintiff's attorney be fixed at $175; and the case is hereby remanded to the trial court for the purpose of fixing the fee of the expert who testified on behalf of the plaintiff, and such fee is to be taxed as costs in this case.

### On Rehearing

MOISE, Justice.

A rehearing was granted in this matter, and defendants, Pipe Line Service Corporation and St. Paul Mercury Indemnity Company, urge that our original decision contains the following two errors:

1. Allowing attorney's fees under LSA–R.S. 23:1141.

2. Unfairly averaging the percentage of loss of use or function of the foot by employing the low percentages of disability found by defendants' medical witnesses and the high percentage of plaintiff's doctor.

Our original decision held that the penalty provisions of LRS–R.S. 22:658,[1] Act 417 of 1952, do not apply to the present controversy, as plaintiff did not prove that his former employer acted in an arbitrary or capricious manner. Under that section, attorney's fees are allowed in addition to the compensation award, but, only where the insurer has acted unfairly by not paying the employee promptly the compensation due him. Fruge v. Pacific Employers Insurance Co., 226 La. 530, 76 So.2d 719.

1. "All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the in-

surer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. * * *"

"It is seen that the statute, which is written into the policy, makes it the direct obligation of the insurer to pay the injured employee. Thus, the employee is constituted, for all intents and purposes, the insured under the policy. The fact that LSA–R.S. 22:658, as a penalty statute, is subject to strict construction, does not necessitate an interpretation which leads to consequences plainly unintended by the lawmaker. A reading of the statute reveals a clear intent and purpose to penalize the arbitrary refusal of insurers to pay just claims after 60 days notice of the loss. Manifestly, in workmen's compensation cases, the loss is sustained by the employee and the obligation imposed on the insurer by the Employer's Liability Act (LSA–R.S. 23:1162) is directly in favor of such employee; it is to him that the claim is payable. To hold otherwise, would require that we blind our eyes to obvious realities and render impotent the provisions of R.S. 22:658 in so far as workmen's compensation policies are concerned. This we will not do." Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695, 699.

There is no provision for assessing the employer or his insurer with attorney's fees when—as in the instant case—neither of them has acted unfairly.

LSA–R.S. 23:1141 provides:

"Claims of attorneys for legal services in connection with any claim arising under this Chapter shall not be enforceable unless approved by the court. If so approved, such claims shall have a privilege upon the compensation award, but shall be paid therefrom only in the manner fixed by the court.

"In no case shall the fees of an attorney who renders services for an employee coming under the provisions of this Chapter exceed twenty per centum of the amount of the award, provided that the maximum fee shall in no case exceed one thousand dollars."

We interpret the above section to mean that attorney's fees are to be paid from the compensation award in a manner fixed by the Court. Therefore, our original decision was in error in allowing attorney's fees over and above the compensation awarded to plaintiff. In Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625, the fees were allowed from the compensation award.

We have carefully reviewed our original decision, and, while we do not hold that the percentage of disability found by attending physicians and surgeons should be averaged in all workmen's compensation cases, we find that a process of averaging was correct and reasonable under the existing circumstances in the instant matter and that the compensation awarded was fair and just.

For the reasons assigned, it is ordered that our original decree set aside by the granting of a rehearing in this proceeding be reinstated and amended to disallow attorney's fees as additional award. It is further ordered, in conformity with LSA–R.S. 23:1141, that attorney's fees be allowed plaintiff's attorney, not to exceed 20% of the compensation payments nor more than $1,000, to be deducted as such from said payments.