112 So.2d 771 (1959)
Joe FRANCOIS, Plaintiff-Appellant,
v.
CIRCLE DRILLING COMPANY, Inc., Defendant-Appellee.
No. 4834.
Court of Appeal of Louisiana, First Circuit.
May 27, 1959.
Guillory & Guillory, Eunice, for appellant.
Porter & Stewart, Lake Charles, for appellee.
Before ELLIS, TATE and LOTTINGER, JJ.
*772 ELLIS, Judge.
Plaintiff has appealed from a judgment of the District Court denying him any compensation as the result of an alleged accident on November 10, 1956, while employed as a rough-neck in the drilling of an oil well for the defendant company and as a result of such an accident plaintiff contended that he has suffered total and permanent disability because of an alleged muscular strain of the left side of the neck and left shoulder region which might be described as a myositis and/or a whiplash injury, together with an injured right inner ear, with a resultant hearing loss in both ears, and, in the alternative, that the injury to the inner right ear with loss of hearing in both ears entitled him to compensation not to exceed 65% of his wages during 100 weeks under LSA-R.S. 23:1221(4), Sub Part (p), in that "the usefulness of a physical function is seriously permanently impaired * * *."
It is admitted that plaintiff suffered an accident and injuries on November 10, 1956, while employed by the defendant. As contended by the plaintiff, the question before the court is the nature and extent of the injuries, and whether they are sufficient to justify a finding of total, permanent disability, and if not, whether in the alternative the plaintiff has suffered an impairment of his bodily function under the provision of LSA-R.S. 1221(4), Sub Part (p).
The record reveals that plaintiff had been employed by Owens Drilling Company from August 15, 1955, until October 7, 1956, when this project was discontinued and he then obtained work with the Circle Drilling Company, and had worked for the latter three weeks when on November 10, 1956, he was struck by what was known as a "lead tong" on the right side of his head over the ear causing a severe laceration of the ear. Immediately after the accident he was taken to Dr. J. J. Stagg, a general practitioner and surgeon of the town of Eunice, La. Dr. Stagg found plaintiff "had a severe laceration of the lobe of the right ear. He had compound comminuted fractures of the cartilage of the ear." The wound was sutured and all small fragments of cartilage were removed and an x-ray examination made of his dorsal spine and of the skull by Dr. Cramer who reported the x-ray negative for any fractures.
Plaintiff was seen by Dr. Stagg on the 12th of November, the 14th of November, 17th of November, 20th of November, 30th of November and the 12th of December, 1956, on which occasions he returned for dressing of the wound and the removal of the sutures. Plaintiff complained of lack of hearing and pain in the back of his neck and in between the shoulders. Dr. Stagg referred him to Dr. Casanova for the impairment of his hearing and the latter referred him to Dr. Ramagosa for x-rays. Dr. Stagg also referred him to Dr. Hatchette for his complaints of pain in his neck and in between the shoulders. Dr. Casanova found that the plaintiff's hearing was impaired 37% in the right ear and 15% in the left ear, and according to standard, accepted scales used in the profession that plaintiff had a total deficiency of 17.5%. The medical opinion as to the loss of hearing is in accord that it would not disqualify plaintiff for employment, and specifically the nature and kind he had been doing as a "rough-neck" on the date of the injury.
Dr. Hatchette examined the plaintiff on December 17, 1956, and found no objective symptoms denoting any injury as the result of the accident to substantiate plaintiff's complaint of pain in his neck and between his shoulders, but did find an objective symptom which he testified had no causal connection with the accident and injury. Dr. Hatchette was of the opinion that plaintiff had suffered a mild muscle strain not unlike a whiplash injury and that he should be able to resume work within two or three weeks from the date of his examination. As a matter of fact, plaintiff returned to work for his original employer, the Owens Drilling Company, the day after Dr. Hatchette's examination, which would be December 18, 1956. Plaintiff was paid compensation *773 by the defendant for five weeks or through December 23, 1956, which was the date it discovered that plaintiff had gone to work for Owens Drilling Company. Plaintiff continued in the employ of the Owens Drilling Company as a "rough-neck" continuously from December 18, 1956, to May 13th, which was the day of the trial, and although plaintiff argues that he obtained this employment only after special permission had been granted to hire him because of the fact that he was an old employee and had a good record previously, we are convinced from the facts that the plaintiff, without any complaints, satisfactorily performed all the duties required of him. There is no evidence that he complained of pain to any fellow employees while working. There is evidence by one fellow employee that while he did his work satisfactorily, at times he noticed or saw facial expressions which he thought denoted that plaintiff was working with pain. Plaintiff argues that he had a wife and four children to support and that therefore it was necessary that he work even though in pain.
After a careful consideration of the records we believe that the lower court was correct in finding that the long line of authorities which have definitely settled the jurisdiction of this state to the effect that one is not required to work in pain and is to be considered disabled if doing so was not applicable under the facts of this case. If plaintiff was suffering any pain at all it was evidently of such a slight nature that it did not cause him to fail in any respect to fulfill all the duties required of him as a "rough-neck" nor verbally reveal such pain to any coemployee.
The judgment of the lower court in rejecting plaintiff's prayer for total and permanent disability as a result of this accident was not in any manner manifestly erroneous.
We do, however, believe that the lower court was in error in not awarding plaintiff compensation under LSA-R.S. 23:1221(4) (p) which provides:
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments: * *
"(4) (p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."
In Professor Wex Malone's book, "Louisiana Workmen's Compensation Law and Practice," page 363, Section 284, under the hearing "Compensation for Impairment of Function" we find:
"It will be noted that the provision of the Act quoted in the preceding section on Disfigurement likewise directs the payment of compensation for an impairment of the usefulness of a physical function. Here again, as in cases of disfigurement, this provision does not apply where there is an accompanying disability.
"A question arises as to how serious an impairment must be before compensation can be allowed under this provision. If the impairment amounts to one of the specific losses enumerated in the schedule, the provision under consideration does not apply. If the injury is less than this, or if it affects some organ or member not listed in the schedule, it is within the purview of this provision so long as it is more than a mere triviality and yet does not arise to the dignity of a disability.
"Compensation has been allowed under this provision for injury to a rib, *774 an impairment of the hearing, and, in one early case, for loss of one-half of a foot. * * * However, in a recent case the decision suggests that a liberal attitude should be expected and the court allowed compensation for the loss of the distal phalanx of each of several fingers on the left hand which did not result in disability."
Many decisions are cited to substantiate the statement of Professor Malone and in one, the Second Circuit Court of Appeals allowed compensation under the provisions for impairment of hearing. This case is Burrows v. Arizola Petroleum Company (Second Circuit Court of Appeal), 7 La. App. 704. In this case the court found that plaintiff's hearing was impaired and that the condition was produced by the accident, but according to the medical testimony the impairment was not sufficient to produce disability to do work of a reasonable character. The court also found that the plaintiff could hear and understand ordinary conversation across the room, and it was only where more than one person talked that he got confused. There was no indication in the testimony that plaintiff experienced any difficulty in hearing questions propounded to him in court. Based upon these facts the court allowed compensation under the provision of the law where the usefulness of a member of any physical function is seriously, permanently impaired.
In the case of Dronet v. American Mut. Liability Ins. Co., 69 So.2d 114, this court with Judge Cavanaugh as its organ awarded compensation under LSA-R.S. 23:1221(4) (p) where a permanent neck injury did not affect plaintiff's ability to work or his earning capacity. In this case plaintiff had received a compensable neck injury which had resulted in fusion of fractured cervical vertebrae so that forward movement or flexion was impaired to ten degrees, lateral movement to right ten degrees, and lateral movement to left twenty degrees. Plaintiff was awarded by this court $15 per week for a period not exceeding 110 weeks, though plaintiff, after injury, was able to perform the same kind of work he was performing at the time of the accident and was not permanently disabled to perform work of a reasonable character.
In the award of compensation for the serious impairment of a physical function under the statutory provision in question, the court is permitted to use its sound discretion in fixing the amount of the weekly compensation "in proportion to the compensation * * * provided in the cases of specific disability" (statutory language) but such award must be made payable for the fixed period of 100 weeks and the amount of the weekly compensation may not exceed 65% of the weekly wages at the time of the accident. Jarreau v. London Guarantee & Accident Co., La.App., 98 So. 2d 727; Dronet v. American Mutual Liability Ins. Co., La.App., 69 So.2d 114; Goins v. Shreveport Yellow Cabs, Inc., La.App., 200 So. 481. (Further, as the two last-cited cases hold, the employer or his insurer is entitled to credit for compensation previously paid under disability sections of the statute.)
In addition, in making the awards for specific disability upon which provisions the present award is to be patterned, the award of the percentage of loss is to be based upon a percentage of 65% of the full wages paid rather than upon a percentage of the weekly rate of workmen's compensation payable for total disability, Hall v. Pipe Line Service Corp., 233 La. 821, 98 So.2d 202; Morgan v. Standard Acc. Ins. Co., La.App., 51 So.2d 107; although of course the weekly rate thus arrived at shall not exceed the maximum statutory rate of $35 per week, LSA-R.S. 23:1202. Thus, if a 15% loss of function of a specific member is proven in the case of an employee whose wages were $100 per week, the rate of the weekly award should be 15% of $65 (i.e., 65% of the weekly wages) rather than 15% of $35.
With regard to the present case, a loss of hearing is proved to have resulted from the accident in the amount of 37% for the right ear and 15% for the left ear, which *775 according to the standard scale for estimating loss of hearing results in a 17.5% loss of hearing from both ears under normal testing conditions, which do not include noise and other disturbances common to everyday life and work. The medical and lay evidence shows, however, that a far more substantial impairment of function is sustained than the mere percentage loss of hearing measurable under the testing conditions in which the patient has practically the full use of the slightly injured ear. For instance, when the hearing in the left ear is obscured by the noise of machinery or conversation from the left, the claimant is forced to rely solely upon the right ear, for which the impairment of hearing is considered serious. Further, the claimant suffers from a ringing and humming sound in his ear, whichwhile not disabling nor measurable by loss of hearing scales amounts to a more serious impairment of the function than the mere averaged percentage loss of hearing.
Under the evidence before us, this substantial impairment of hearing does not, with the use of plaintiff's comparatively good ear, disable him from the performance of his duties in the oil drilling industry, not constitute a danger to himself or his co-workers, nor amount to a serious enough detriment as to represent a competitive handicap in securing employment in the open market. It is therefore not compensable under the disability provisions of the statute. On the other hand, it is a substantial impairment of the function of hearing in the respects above captioned, and also because the evidence indicates that just a slight (10-15%) additional loss of hearing in the relatively good ear (the left, which just sustained a 15% loss of hearing in the accident), resulting from natural cause or accident, may constitute an effective hindrance to plaintiff's performance of his duties or to his obtaining employment in oil field work.
Therefore, exercising the sound discretion the statute enjoins upon us, and considering that plaintiff's weekly wages are shown by record to have been approximately $100 at the time of his accident, we will award plaintiff compensation at the rate of $35 per week, less credit for compensation previously paid.
For the above and foregoing reasons, the judgment below is affirmed insofar as it dismissed plaintiff's claim based upon total and permanent disability, but it is reversed insofar as it dismissed plaintiff's suit, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Joe Francois, and against defendant, Circle Drilling Co., Inc., for weekly compensation at the rate of $35 for 100 weeks, commencing November 10, 1956, less credit for five weeks compensation paid at such rate; together with interest at the rate of 5% per annum upon each delinquent compensation payment from date of delinquency until paid. All costs to be paid by defendant-appellee.
Affirmed in part and reversed in part.