McBRIDE, Judge.
Charley Henry, a colored man 59 years of age, suffered injuries during the scope and course of his employment with the defendant as a sisal machine operator on December 5, 1957, when a heavy lid on the machine accidentally fell upon his right thumb crushing it at its base or just about where that member joins the hand.
Henry was paid compensation for a period of 20 weeks, during which time because of the injury he was incapable of returning to his employment, the weekly payments being at the rate of $29.25 (65 per cent of his wages), and such payments in the aggregate total $589.16. The employer also paid the medical expenses incurred in the sum of $401.50.
Henry is claiming the injuries accruing to him in the accident aforesaid have rendered him totally and permanently disabled from returning to his employment or doing work of any reasonable character, and by this suit he asserts a demand against said employer for compensation for 400 weeks at the rate of $29.25 per week, plus statutory penalties, and for the fee of his medical expert witness. The defense is that Henry was not in a disabled condition after May 26, 1958, and that the 20 weeks’ compensation paid him covered the period of his disability and he is entitled to no further compensation benefits.
In the lower court after trial, there was judgment in favor of defendant dismissing plaintiff’s suit, from which plaintiff has taken the appeal which is now before us.
There is only a question of fact involved in the case. Was Iienry disabled from resuming his occupational duties as a result of the accident after the date of his medical discharge on May 26, 1958?
The falling of the heavy lid upon plaintiff’s hand caused what the doctors described as a crushing-type injury, and none of the X-rays showed fractures or dislocations. Plaintiff immediately reported the accident and his injury to his superior, and a dressing was applied to his hand, after which he returned to work and completed the full day. The next day his thumb was swollen, but nevertheless he also worked on that day. Upon completing his work, he reported to Dr. J. Kelly Stone, the employer’s doctor, for treatment, and remained under his care until January 4, 1958, when he was given his medical discharge. Dr. Stone diagnosed the patient’s injury as a contusion and slight laceration at the base of the right thumb; he placed the thumb in a splint, and after its removal, he gave diathermy treatment and made an injection in the joint of the thumb of a medical preparation.
It is evident that Dr. Stone prematurely discharged Henry on January 4, 1958, for we find from the record that after the discharge Henry attempted to and did work at his job until January 20, 1958, when he was forced to again visit Dr. Stone for treatment, and the doctor admits Henry returned to him with “considerable swelling in his thumb.” Dr. Stone, following the recommendation of Dr. A. N. Houston, industrial surgeon to whom Dr. Stone had referred the patient for examination, treated Henry until March 3, 1958, at which time Dr. Stone had him admitted to a local hospital where he underwent a surgical procedure to remove an enlargement of the tendon of the thumb described as a “granuloma.”
Dr. A. N. Houston, the industrial surgeon, saw Henry on February 11, 1958, and diagnosed his condition as a peritendinitis thickening which limited flexion of the right thumb to about 50 per cent. He suggested that Dr. Stone should administer *272 conservative treatment, and if this did not benefit the patient, there should he an operation and the operation performed by Dr. Stone was that suggested by Dr. Houston.
After the operation Dr. Stone continued in his treatment of plaintiff until Dr. Robert Rose, an orthopedic surgeon who examined plaintiff at the request of Dr. Stone, made a report stating that in his opinion plaintiff was able to return to work. Acting on his own observations as well as upon the opinion of Dr. Rose, Dr. Stone discharged plaintiff on May 26, 1958.
It is not disputed that at the time of his second discharge by Dr. Stone plaintiff still had a 50 per cent loss of flexion in the right thumb which we are told amounted to a loss of use of the thumb to- the extent of from 10 to 15 per cent. But Drs. Rose and Stone testified emphatically that such loss is not disabling and they see no reasop why Henry cannot return to his usual em-. ployment, as there is nothing abnormal about the neurological aspect of the thumb. They could perceive no reason for any pain.
On the other hand, plaintiff claims he is still troubled by pain and he is not “able to handle that job.” His medical expert, Dr. Blaise Salatich, an orthopedic surgeon, saw plaintiff on two occasions, namely, June 18, 1958, and October 8, 1958, for the purpose of “orthopedic evaluation.” Dr. Salatich states that on the first examination he discerned Henry was unable to exert a normal degree of grasping, gripping, and clenching strength with his right hand, and that he had a “minimal degree” of flexion of the thumb. He noted tenderness and swelling over the thumb and that the rotation thereof was painful. His estimation was that the tenderness denoted an abnormality. Dr. Salatich says he found no improvement on the occasion of his second examination, and there was nothing which would lead him to believe that Henry’s condition would get better in the future. He characterized Henry as being permanently and totally disabled from doing the work of a sisal machine operator.
'The trial court saw and heard the medical experts testify, observed the examinations of Henry conducted by them in the courtroom, and saw the manipulations of plaintiff’s thumb by the doctors, and at the conclusion of the trial, his opinion was that whatever conflict there was in the medical testimony should be resolved in defendant’s-favor. We are sure that the judge took into consideration the nature of plaintiff’s-work in arriving at his conclusion that plaintiff could return to the duties of the employment. There was produced in the court at the time of-the .trial a bag of sisal,, and the judge was evidently impressed by the lightness of the material. It appears-there is hardly more weight to the substance than an armful of any lightweight material, such as feathers, grass, or weeds. The manager of defendant’s plant as well as the superintendent thereof were produced as witnesses by the defense, and they told the court of the nature of the work which Henry had been doing and pointed out that he handled sisal and sometimes cotton but only by the armful, which did not weigh over 4 or 5 pounds, and that these products were spread on a conveyer line and then to the machine.
We see no reason at all for disturbing the findings made by our brother below,, as the medical testimony and that given by employees of defendant as to the nature of plaintiff’s work fully supports the conclusions reached by the court. At least it. could not possibly be said there is manifest ■error in the judgment.
Certain evidence introduced by plaintiff establishes that he has an excellent work record with the defendant in whose employ he was for a period of about 12 years, and it is argued to- us by his counsel that plaintiff’s work record and the integrity he displayed on the job should offset any thought that he is not telling the truth when asserting that because of the pain he-suffers he cannot return to the job. However, in this particular case, we do not believe that this evidence is sufficient to prevail over the testimony of the defense medi *273 cal experts to the effect there is no pathology-in plaintiff’s hand and there is no reason why he should still suffer pain as a result of the injury which caused his initial disability. There was some mention that there was arthrosis in plaintiff’s thumb, and if plaintiff does suffer pain, it occurs to us it could well be that such degenerative condition might be the cause thereof.
The trial judge also held that plaintiff sustained a IS per cent loss of the use of his thumb, and that under the compensation statute he would be entitled to compensation for this partial loss of use of the member were it not for the fact that the total amount due him therefor is less than the amount of compensation already paid him for the temporary total disability. This ruling is correct.
If an employee meets with an accident and his injuries render him temporarily totally disabled and then after recovery he is found to have suffered the loss or partial loss of the use of a member, such as an arm, hand or thumb, he is to receive compensation in conformity with subdivision 4 of LSA-R.S. 23:1221, which makes provision for compensation for the specific loss of a member, but from the compensation to which the workman would be entitled under subdivision 4 there must be deducted such amount as was paid him for the period of his disability. In such case the “amount” of the credit which is to be allowed to the employer is to be on a dollar for dollar basis and not on a week for week basis. The Supreme Court in Hall v. Pipe Line Service Corporation, 233 La. 821, 98 So.2d 202 approved our holding to that effect in O’Connor v. American Mutual Liability Ins. Co., 87 So.2d 16, and quoted from our opinion therein, as follows:
“An injured workman cannot recover compensation both for specific loss, such as a partial loss of the function of any member, and for temporary total disability. LSA-R.S. 23:1223 provides that where compensation has been paid under the disability provisions the amount of such payments shall be deducted from any compensation allowed for a specific loss, * * *." [233 La. 821, 98 So.2d 205.]
Also, see Flanagan v. Welch, La.App., 93 So.2d 36.
For a 15% loss of the use of his thumb, Plenry would be entitled to 15% of 65 per centum of wages during 50 weeks under subdivision 4(a) and (o), and whereas the benefits so due would be less than $10 per week, he would be entitled to the minimum compensation of $10 per week as provided by LSA-R.S. 23 :1202, as amended by Act 411 of 1956. In other words, for the partial loss of the use of his thumb the claimant would be entitled to receive an aggregate of $500 in compensation. But whereas the total amount of $589.16 paid him for his temporary total disability is greater, he is entitled to nothing for the specific loss.
For the reasons above assigned, the judgment appealed from is correct and it is affirmed.
Affirmed.