REID, Judge.
Plaintiff Scott Tillman brings this suit for workman’s compensation against his
182 So.2d — 34V2 employer Webre Steel Company and its compensation insurer Travelers Insurance Company for total and permanent disability as a result of an injury which he received on November 8, 1962.
Defendants filed an answer admitting the injury, denying the total and permanent disability, admitting that 65% of plaintiff’s average weekly wage would equal or exceed $35.00 a week and further alleged that compensation was paid plaintiff from the date of the accident through December 20, 1963 for a total of 53 weeks at $35.00 per week or $1855.00. In addition the compensation insurer, Travelers paid plaintiff’s medical expenses in the total amount of $1132.97.
The case was tried and the Judge of the Lower Court for written reasons assigned rendered judgment in favor of the defendants and against the plaintiff, rejecting plaintiff’s demand and dismissing this suit at his costs.
Plaintiff-appellant assigns two reasons why the judgment of the Lower Court is incorrect and should be reversed. The first argument is that this case should be decided on the rule of law handed down in Brannon v. Zurich General Accident and Liability Insurance Company, 224 La. 161, 69 So.2d 1. The second argument is that the testimony of the insured Mr. Lynn J. Webre indicates disability notwithstanding the uniformity of all the medical testimony the plaintiff can return to the same type of work.
An examination of the Brannon v. Zurich case, supra, shows that the facts are different and this case does not apply to the instant one. It is true that Brannon had a knee injury and it was necessary to remove the patella at the knee joint by surgery. However, Brannon was a carpenter and the plaintiff in this suit, Tillman, was an ordinary laborer. Brannon was injured and had an estimated disability of 30% compared to 10 or 15% for Tillman. Brannon’s duties required considerable climbing whereas Tillman’s did not.
*538 The Court in the Brannon,case held that an employee who by training, experience, status and education was engaged in a specialized trade and whose injury prevents him from continuing in that trade is totally and permanently disabled within the meaning of the workman’s compensation law. It further held that a carpenter whose knee was so badly injured that it was necessary to remove the patella at the knee joint by surgery was totally and permanently disabled because it prevented him from engaging in the usual and customary work for which he had been trained.
Plaintiff put on the Stand as witnesses in his behalf two well known and qualified orthopedists from Baton Rouge, Dr. Alvin Stander and Dr. J. Willard Dowell. Dr. Stander was his treating physician and he discharged Tillman on December 16, 1963 at which time he stated he could return to work but that he would have a 10 to 15% permanent disability. It was his belief that Tillman could overcome some early fatigue which would be normal \vhen he returned to work after an injury of this character.
Plaintiff returned to work on or about March 29, 1963. He was doing lighter work, such as driving a truck, washing windows and cleaning up the office. Defendant paid him an average of $50.00 a week for doing this light work. He seems to have twisted his leg in some manner and had to go back to Dr. Stander for another operation which was on May 24, 1963. Plaintiff never returned to his duties with the defendant company. Dr. Dowell testified that he examined plaintiff on October 8, 1964 and estimated that his disability was 15% due to the patellectomy. He attached no significance to Tillman’s complaint on full flection and felt there was no limitation of flection in this case, and that Tillman could work in a squatting position and could also work on a scaffold. He could see no reason why Tillman would have any pain while working in a squatting position and that complaint of pain upon squatting after removal of the patella was not common. He further testified that plaintiff would be able to do the same work that he had done before.
Plaintiff himself took the Stand and swore that he could not work without pain and that when he squatted he had pain and that he was unable to work on a scaffold. Plaintiff had no specialized training and' was just an ordinary laborer.
Th'e Judge of the Lower Court in his written reasons for judgment found as-follows:
“I do not believe plaintiff has made out a case justifying an award for total and permanent disability, but rather that he has shown a partial loss of physical function, which the court would fix from medical testimony at 15 per cent. Applying the-provisions of the statute and the jurisprudence, he would be entitled to that percentage of 65 per cent of his weekly-wages for a period of 175 weeks. The percentage would figure less than $10.00 a week, which is the minimum provided by the statute. With that weekly rate for 175 weeks we would' come up with a total of $1750, and the evidence shows that the defendant has paid plaintiff $1855 in addition to all of his medical expenses.
Plaintiff’s demeanor on the witness stand in connection with defendant’s cross-examination of him relative to certain statements made by plaintiff on the taking of his deposition considerably weakened his credibility in the mind of this court.”
With this finding of the Trial Judge we are in accord on this particular argument in the case.
This brings us to the question of the testimony of Mr. Lynn J. Webre, the president of the defendant corporation. Mr. Webre testified that plaintiff had performed lighter duties after the first accident and operation. For this he paid him a reduced salary or wage and continued paying him up-until it was necessary for plaintiff to have *539 the second operation. Tillman had some trouble after his first operation and this is the reason that he was placed on light ■duty. After the second operation in May of 1963 plaintiff did not return to work for the defendant. We fail to see where Mr. Webre’s testimony was of any comfort to the plaintiff.
LSA-R.S. 23:1221(4) (h) provides for loss of a leg 65% of wages during 175 weeks. LSA-R.S. 23:1223 provides:
‘ Where compensation has been paid under subdivisions (1), (2), or (3), of R.S. 23:1221, the amount of such payment shall be deducted from any compensation allowed under subdivision (4) thereof or under Sub-part C of this Part.”
We believe that this case is covered by the doctrine laid down in Hall v. Pipe Line Service Corporation, 233 La. 821, 98 So.2d 202. In that case the plaintiff sustained a permanent partial disability of the left foot. The Court averaged the estimate of the permanent disability and arrived at a figure 17.5%. There was nothing in the disability to prevent plaintiff from engaging in work of a reasonable character and the Court fixed his compensation at 65% of the weekly wage times the percentage of disability, times the amount allowed for the loss of the member involved. This is what was done in the instant case. Our Court has followed the Hall v. Pipe Line, supra, in the cases of Fontenot v. Myers, La.App., 109 So.2d 259, and Francois v. Circle Drilling Company, Inc., La.App., 112 So.2d 771.
In the Fontenot v. Myers case this Court distinguished a total and partial disability of the body as a whole from a total disability of one member of the body which would not prevent him from engaging in his ordinary work. We believe this is the correct law. See also Babineaux v. Great American Insurance Company, 245 La. 718, 160 So.2d 591, and Williams v. North American Insurance Company, La.App., 169 So.2d 586.
For the foregoing reasons we find the judgment of the Lower Court is correct and is hereby affirmed.
Affirmed.