BAILES, Judge.
This workmen’s compensation suit was instituted by plaintiff, Roosevelt Jones,, against Pearce & LeBlanc Contracting Co. Inc., and its insurer, The American Insurance Company, to recover maximum' workmen’s compensation benefits under the-provisions of LSA-R.S. 23:1021 et seq., and for penalties and attorney fees under provisions of LSA-R.S. 22:658. Plaintiff claims, as the result of job-incurred injuries received on February 5, 1962, he is totally and permanently disabled to perform the usual and customary duties of a general laborer. It was stipulated his compensation rate was the maximum of $35.00. He was paid compensation at this rate from: the date of injury until August 24, 1964.
This case was tried on September 27,. 1965. For oral reasons, which were reduced to writing and placed in the record, the trial court denied plaintiff’s claim at his-costs.
The evidence adduced on the trial of this case shows plaintiff was employed by the defendant employer as a common or general laborer sometime in 1960. He worked satisfactorily and uneventfully until' on the morning of February 5, 1962, he met with a mishap. Up to this time his duties included driving a large dump truck, clearing lots of ground for the construction of dwellings, cleaning up sites after construction, sometimes moving dirt with shovel, felling trees, hauling limbs, and other duties associated and akin to this type work. Even occasionally, plaintiff might have been required to pick up rocks and do a small amount of ditch digging.
On February 5, 1962, plaintiff was severely and seriously injured when struck by a falling tree. Examination by one of the *217 treating physicians revealed he suffered multiple rib fractures, a fracture of the spinous processes of the second and third lumbar vertebrae, a fracture of the right transverse process of the fourth lumbar vertebra, fractures of the second and third metatarsal bones of the right foot and a fracture of the left medial malleolus (left ankle). He was hospitalized for treatment of these injuries from the date of the accident until February 28, 1962, and was hospitalized again at a later date for the purpose of receiving certain physical therapy.
Plaintiff made an uneventful recovery from these injuries, and on August 31, 1962, his treating physician, an orthopedist, found no permanent residual disability and that he had recovered sufficiently to continue in his job activities as a general laborer. At the suggestion of his physician, plaintiff was assigned light duties for the purpose of helping to condition him for full duty. His physician thought this advisable because he had been off work for the past six months. He remained on light duties until defendant employer, on or about August 24, 1964, discharged him for failure to report for full duty as a general laborer.
During the course of his recovery, plaintiff was treated by Dr. Brown, a general practitioner, and Dr. Smith, an orthopedist. He was examined by Dr. Williams, a general surgeon, and by Dr. Cracraft, an orthopedist. All but Dr. Brown testified as witnesses in the trial court.
Dr. Williams examined plaintiff on September 7, 1965, about three weeks prior to trial and undoubtedly for the purpose of testifying. He concluded from his examination plaintiff was not capable of heavy labor required of a general laborer because of his previous back injury. He also found the fracture of the left ankle and that a screw had been placed therein in an open reduction, and also found good motion of .the ankle and concluded the ankle was quite serviceable. This doctor testified he found muscle spasm of the back muscles and also scoliosis of the spine.
Dr. Cracraft testified he first examined plaintiff on February 20, 1963. From this examination, this witness testified in his opinion plaintiff could do any kind of general work as a common laborer. He noted some swelling of the left ankle but determined it was not disabling at all. On the day of the trial, he examined plaintiff in the judge’s chamber, at the request of the court. He found no muscle spasm and no appreciable scoliosis.
Dr. Smith, the treating physician, followed the progress of the plaintiff continuously from the date of injury to the date of trial. He, too, examined plaintiff, along with Dr. Cracraft, on the day of the trial. Among a number of examinations of plaintiff during the course of treatment, Dr. Smith testified he found on August 18, 1964, the following:
“ * * * Physical examination from the general standpoint of watching him walk and so on was again normal as related to my previous examinations. The low back examination was again within normal limits. Examination of the left ankle again revealed the well healed surgical scar over the medial malleolus region; otherwise, an examination of this area was normal. Examination of the right foot again revealed no abnormal findings. There was no swelling in the left ankle, right ankle, left foot or right foot. * * * X-rays again were repeated of the patient’s low back and they again showed complete healing of the previous fractures. Hypertrophic changes were noted in the lumbosacral spine which had been noted on all previous x-rays of the low back and which did not show any apparent progression as compared to previous x-rays. X-rays of the left ankle again revealed complete healing of his medial malleolar fracture with the metallic screw in place. There were no changes suggestive of arthritis or degeneration of the ankle joint. * * * I concluded following this examination that Roosevelt had recovered completely from *218 any injuries he had sustained as a result of his accident in August [February] of 1962. I did not feel he had any residual disability from the orthopedic standpoint. I felt he did have a ganglion of the left little finger which was not in any way related to the patients previous injuries. I felt that this was a degenerative phenomenon.”
On September 24, 1965, Dr. Smith again examined plaintiff. For the first time in this examination he found plaintiff had early hypertrophic changes along the medial malleolar where the medial malleolus articulates with the talus and a small hyper-trophic lip of the anterior articular surface of the distal tibia, all demonstrated on x-ray. Dr. Smith concluded, as a result of this condition of early hypertrophic arthritis of the left ankle joint, plaintiff had an approximate 10 per cent disability of the left ankle joint. It was his opinion this disability would not keep him from performing general labor. It was his opinion that many people doing general labor have ankles much worse than this ankle of plaintiff. He testified plaintiff made no complaint of ankle pain to him.
The plaintiff in his brief assigns the following specification of error: The trial court failed on the facts to find that the appellant was totally and permanently disabled as a result of this accident which he suffered within the meaning of the Workmen's Compensation Statutes.
In the trial judge’s reasons for judgment he concluded there was actually no conflict in the testimony of Dr. Williams who found a scoliotic condition of the back and muscle spasm and the testimony of Dr. Smith and Dr. Cracraft, each of whom found no such condition on the day of trial. The trial judge considered that if this condition existed as reported by Dr. Williams it was of minor or inconsequential nature as it was not present on the day of trial. The trial judge found plaintiff was suffering a job-connected ten per cent disability of his left ankle. He found this disability not disabling insofar as preventing plaintiff from competing with able-bodied workers in the common labor market.
Plaintiff contends he should be adjudged totally disabled to perform work as a general laborer because of the pain he endures. The proof offered by plaintiff, that he suffers substantial pain, as contended for in his brief is entirely inadequate to support a finding that plaintiff is totally disabled within the contemplation of the jurisprudence cited in support of his position. Plaintiff relies on the cases of Reed v. Clacasieu Paper Co., 233 La. 747, 98 So.2d 175; Brannon v. Zurich General Accident & Liability Insurance Co., 224 La. 161, 69 So.2d 1; Hunter v. Continental Casualty Co., La.App., 126 So.2d 394; Manuel v. Southern Farm Bureau Casualty Insurance Co., La.App., 135 So.2d 68; and Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138. We certainly have no quarrel with the principle contended for by plaintiff and enunciated by these cases, however, we find the facts do not warrant or justify the application herein.
It is too well established to need citation that in a workmen’s compensation case, as in any other case, the plaintiff must prove his case by a preponderance of the evidence, and herein we find the plaintiff has failed to sustain the burden of proving the existence of such pain on working as to justify a holding by us that he is totally disabled to perform the duties of a general laborer.
 Plaintiff further contends because of his ten per cent disability to his left-ankle, the lower court erred in not finding him totally and permanently disabled. We cannot agree with plaintiff. According to the testimony of Dr. Smith and Dr. Cracraft, both on August 24, 1964, and on the day of the trial, plaintiff was able to perform the duties required of a general laborer even though he did bear the ten per cent disability to his left ankle.
*219 We believe the holding of this court in Mitchell v. Connecticut Indemnity Company (La.App., 1963) 161 So.2d 460 is controlling of the question of whether the plaintiff, because of the ten per cent disability to his left ankle, is entitled to be adjudged' totally and permanently disabled to perform the duties of a general or common laborer. In that case it was determined the plaintiff’s injury resulted in a five to ten per cent disability of the left foot. This court adopted the following reasoning: ■
"[1,2] As was stated by the Court,in the Loflin case (Loflin v. Erectors and Riggers, Inc., La.App., 68 So.2d 694), the best criterion to follow in order to determine the question of whether or not a workman is totally disabled, is whether the injured workman can do and perform the same or similar work which he was performing at the time of the acoi-dent. * *
Based on the testimony of the medical experts, Dr. Smith and Dr. Cracraft, we find the plaintiff able to perform the duties of a general laborer capable to doing the same or similar type work performed by him for defendant employer at the time of his injury, and under the holding of Mitchell v. Connecticut Indemnity Company, supra, he is not totally disabled.
In view of the finding of ten per cent disability as above discussed, we deem' it appropriate to determine what workmen’s compensation payments plaintiff is entitled to receive.
Again referring to Mitchell v. Connecticut Indemnity Co., supra, we find this same question before this court therein. This court said:
“[3] With regard to benefits for loss of use or function of a specific member, LSA-R.S. 23:1221 provides for sixty-five per cent of wages during a period of 125 weeks for the loss of a foot. To compute the compensation payable for a partial loss of use of a member we multiply the per cent of partial loss times sixty-five per cent of wages and allow the amount thus obtained, per week, for the number of weeks permitted for the total loss of the member. Any compensation based on this formula is regulated by LSA-R.S. 1202 setting out that the minimum compensation that can be paid per week is $10.00. Lethermon v. American Insurance Co., La.App., 129 So.2d 507.”
According to the payroll records filed in evidence ten per cent of sixty-five per cent of the highest wage earned during any week of the entire course of plaintiff’s employment by defendant employer would not equal as much as the minimum weekly compensation rate fixed by LSA-R.S. 23:1202. Therefore, plaintiff is entitled to the minimum of $10.00 compensation benefits for the purpose of computing the total compensation benefit. He was paid compensation of $35.00 per week continuously from February 5, 1962 through August 24, 1964, a period of time in excess of 125 weeks, the number of weeks for loss of foot under LSA-R.S. 23:1221. Applying the formula used by this court in Mitchell v. Connecticut Indemnity Company, supra, which is identical to that prescribed by the Supreme Court in Hall v. Pipe Line Service Corporation (1957) 233 La. 821, 98 So.2d 202, we find plaintiff has received all the compensation to which he is entitled. Also see Tillman v. Webre Steel Company, et al. (La.App., 1966) 182 So.2d 537.
For the foregoing reasons, the judgment of the trial court rejecting the demands of the plaintiff, at his costs, is affirmed. Plaintiff to pay the costs of this appeal.
Affirmed.