216 So.2d 400 (1968)
Annie Laurie ALLEN
v.
INSURANCE COMPANY OF NORTH AMERICA.
No. 3178.
Court of Appeal of Louisiana, Fourth Circuit.
December 2, 1968.
*401 Adrian G. Duplantier and James A. McPherson, New Orleans, for plaintiff-appellee.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Paul B. Deal, New Orleans, for defendant-appellant.
Before YARRUT, BARNETTE and JOHNSON, JJ.
BARNETTE, Judge.
This case comes before us on defendant's appeal from a judgment awarding plaintiff workmen's compensation benefits under the provisions of LSA-R.S. 23:1221.
Judgment initially was rendered in favor of plaintiff awarding compensation at the rate of $10 a week for 200 weeks. Credit was allowed for previous $10 weekly payments made by defendant. Defendant then applied for a new trial for the purpose of amending the judgment to allow credit not only for the $10 payments made after July 4, 1966, but also for $35 a week payments for 34 weeks prior to July 4, 1966, made while plaintiff was under the care of her treating physician.
On hearing of motion for new trial to correct the judgment, the court conceded error in its previous ruling and amended its judgment to grant plaintiff compensation in the amount of $35 a week for 150 weeks, subject to a credit for all compensation previously paid by defendant.
Defendant then filed a suspensive appeal, and alternatively a devolutive appeal, contending the second judgment was in error, *402 and except for failure to allow all compensation previously paid, the first judgment was correct.
The record reveals that at the time of the accident appellee, Annie Laurie Allen, was a registered nurse employed by DePaul Hospital of New Orleans. On November 8, 1965, while attempting to open a set of heavy doors in the hospital, a key broke in the lock and plaintiff fell backward, sustaining a fracture of the left olecranon, or the so-called "funny bone" behind the elbow. Plaintiff was hospitalized from November 10, 1965, to December 4, 1965, under the care of Dr. Kenneth J. Saer, an orthopedic surgeon, who continued to treat her until her release on May 16, 1966. His report of May 16 indicated that plaintiff had reached the point of maximum recovery. During this period plaintiff received compensation from defendant at the rate of $35 a week, based upon a wage of $2 an hour and a work week of 48 hours.
Plaintiff filed suit June 13, 1966, seeking further compensation and claiming total permanent disability. Upon receipt of citation, defendant made an additional payment of $175 which brought the total weekly payments, totalling $1,190, to July 4, 1966. Defendant then began voluntary payments of $10 a week based on the medical report indicating permanent partial loss of use of the arm. This amount was still being paid at the time of the trial below.
Plaintiff has not returned to work since her accident, contending the injury to her elbow has prevented her from satisfactorily performing her duties as a nurse.
The only medical evidence offered was that of Dr. Saer, plaintiff's attending physician. In his opinion plaintiff has suffered a 15-percent loss of flexion of the left arm. When asked if he would recommend her returning to work, he answered negatively. However, this decision was based more upon plaintiff's general condition of age and health than her particular injury. When asked whether the specific injury to the elbow would prevent her from returning to her duties as a nurse, he answered it would not. At the time of the accident plaintiff was 71 years of age and had a history of two previous falls with bone fractures. In August, 1966, she fell again and fractured a rib.
The only question presented by this appeal is the correctness of the trial court's decision in allowing plaintiff compensation benefits of $35 a week for 150 weeks. In its written reasons for judgment, the court stated it felt this was the only "equitable" judgment to render in light of plaintiff's general state of health and age. The court held it was within its discretion as to the number of weeks to be awardednot exceeding 200to which plaintiff would be entitled to compensation. We cannot find any provision of law to sustain the judgment as finally rendered.
It is well-settled jurisprudence in this State that if an employee is physically unable to resume the type of work he was doing at the time of his injuries, he is entitled to compensation benefits under the Workmen's Compensation Act.
If a specific disability can be shown, the question then arises as to what schedule of payments will be allowed under LSA-R.S. 23:1221. If the employee cannot perform work of any reasonable character, whether temporary total, permanent total, or partial, during the period of disability, then the provisions of subsections (1), (2), and (3) of LSA-R.S. 23:1221 apply. However, if it is shown that the employee is able to return to work irrespective of the injury, then compensation is allowed under one of the specific provisions of subsection (4) of the Act. Washington v. Independent Ice & Cold Storage Co., 211 La. 690, 30 So.2d 758 (1947); Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185 (1935); Custer v. New Orleans Paper Box Factory, 170 So. 388, La.App. Orleans (1936).
It is also a well-established rule that where the employee is engaged in *403 work consisting of multiple duties, the question of whether the injuries resulted in total and permanent disability must be decided by determining whether he can return to work and perform substantially all of such duties. If there are some duties incidental to his employment that he is unable to perform, the court then must decide whether such duties were a substantial part of his employment. Anderson v. Continental Can Co., Inc., 141 So.2d 48, La.App.2d Cir. (1962), and cases cited therein at p. 51. As in all civil cases, the burden falls on the plaintiff to prove by a fair preponderance of the evidence that such duties were a substantial part of his employment. Bates v. American Insurance Company, 158 So.2d 70, La.App. 1st Cir. (1963); Ernest v. Martin Timber Company, Inc., 124 So.2d 205, La.App.2d Cir. (1960); Fontenot v. Myers, 109 So.2d 259, La.App. 1st Cir. (1959).
It is undisputed that plaintiff has suffered a permanent partial loss of the use of her left arm. However, we conclude that this is not the cause which prevents her from returning to her duties as a nurse.
Dr. Saer saw the plaintiff on October 2, 1967, in preparation for his testimony to be given at the trial. He testified:
"She had complaints roughly in two areas; one was the hip, from pain of an old fracture; two, she had lesser complaint of occasional soreness in the elbow. On examinations of the elbow, she still had about fifteen degrees limitation of flexion and extension. She had full rotation. She had normal function of the hand, so far as I could tell. And x-rays at that time revealed that the fracture had healed in the interim between my seeing her in May, '66 and October of '67."
He further testified:
"Q When you say you don't recommend she return to nursing, you did consider that fracture as one factor in making that decision?
"A Yes. I think that decision is based primarily on the fact she fell several times and is quite unsteady. Certainly the fact she had a fracture of the elbow is considered. I think the major disability she has is referable to the hip, where she has hip pain, and also to her right knee where she has considerable arthritic change, would probably cause her to fall to break her hip. There are several areas you have to consider. I think it has to be said that the right hip and right knee is more important in making that decision."
Counsel for appellee conceded that the plaintiff's age, general condition of health and her fear of falling, superimposed on the arm injury, were all pertinent factors, but strenuously contended that the arm injury is the major contributing factor, and hence the cause of her disability; in effect, the proverbial "straw which broke the camel's back." It is conceded that the employer takes the employee as he finds him and cannot escape liability because the accident might not have disabled a normal person; but that is not the case we have here. The testimony of Dr. Saer was quite pointed to the effect that the injury suffered to plaintiff's left elbow would not prevent her from performing her nursing duties, notwithstanding some impairment in the use of the injured arm. The fact that she did not return to work is not determinative. What is decisive in our fact situation here is that she could have performed her duties irrespective of the injury to her arm and the residual permanent partial impairment of its use or function. Her case therefore clearly comes within the purview of the scheduled benefits of LSA-R.S. 23:1221(4) (f) (o).
Dr. Saer's uncontradicted conclusion was that plaintiff received a 15-percent loss of flexion in the elbow. Therefore, the corrected method of computation under the pertinent section is to take the proportion of the partial loss from 65 percent of the *404 weekly wages and allow such amount as compensation for the number of weeks permitted for the total loss of the respective member. Hall v. Pipe Line Service Corporation, 233 La. 821, 98 So.2d 202 (1957); Ernest v. Martin Timber Co., supra; O'Connor v. American Mutual Liability Ins. Co., 87 So.2d 16, La.App. Orleans (1956). Sixty-five percent of plaintiff's average wage of $100 a week is $65. Fifteen percent of this would be $9.75, but she is entitled to the minimum of $10 per week under the provisions of LSA-R.S. 23:1202.
Plaintiff cannot recover compensation both for temporary total disability and for the partial loss of the use of her arm. LSA-R.S. 23:1223 reads:
"Where compensation has been paid under subdivisions (1), (2), or (3), of R.S. 23:1221, the amount of such payment shall be deducted from any compensation allowed under subdivision (4) thereof or under Sub-part C of this Part."
Under this provision the compensation paid plaintiff under the disability provisions of LSA-R.S. 23:1221(1) shall be deducted from any compensation allowed for the specific loss. Hall v. Pipe Line Service Corporation, supra; Cain v. St. Paul Fire and Marine Insurance Co., 201 So.2d 286, La.App.2d Cir. (1967); Thompson v. Cloud, 166 So.2d 28, La.App.3d Cir. (1964).
As we stated in Hammond v. Sewerage & Water Board of New Orleans, 204 So.2d 699, La.App. (1967), this amount shall be credited on a dollar for dollar and not a week for week basis. The record reveals that defendant has paid $1,190 for temporary total disability. This amount should be credited against the payments of $10 a week for 200 weeks allowed under the specific loss provisions.
In reaching the foregoing conclusion we have experienced the feeling of reluctance so well expressed by the late Judge Hardy in his concurring opinion in Anderson v. Continental Can Co., Inc., supra, 141 So.2d at p. 53. It seems manifestly unjust that plaintiff's compensation under the pertinent schedule for the specific injury should be substantially reduced by allowing credit for the compensation paid to her during her temporary period of total disability under LSA-R.S. 23:1221(2). We find no authority in the statute, nor in our jurisprudence, however, for the exercise of judicial discretion to make a more equitable award; and the trial court was in error in so doing. It is the function of the court to apply the law and any suggestion of inequity in the statutory provisions should be addressed to the Legislature.
We have considered the possibility of a more adequate award of compensation under the provisions of LSA-R.S. 23:1221 (3) for partial disability, but find this section to be inapplicable to the factual situation presented here. Plaintiff does not claim a "partial disability" and has offered no proof of diminution of wages as a result thereof as contemplated by that section. She claims total disability and is seeking the compensation benefits provided in LSA-R.S. 23:1221(2). Since she has failed to discharge the burden of proof essential for recovery under that section, the only judgment supported by the record before us on this appeal is that which we have rendered herein under the provisions of LSA-R.S. 23:1221(4) (f) (o).
For these reasons, the judgment appealed from is amended so as to grant plaintiff workmen's compensation benefits at the rate of $10 per week for 200 weeks, subject to credit for all compensation previously paid. In all other respects the judgment is affirmed.
The plaintiff-appellee is cast for cost of this appeal.
Amended and affirmed.