CLEMENT M. MOSS, Judge ad hoc.
This suit was instituted by Andrew Black-ledge against Industrial Outdoor Displays, Inc., an alleged partnership, for compensation for total and permanent disability. The defendant filed a plea of prescription of one and/or two years as provided in LSA-R.S. 23:1209, which exception was referred to the merits. Trial was had before Judge Stich, who after hearing the testimony ordered that trial memoranda be submitted. Before such memoranda could be filed, Judge Stich died. Judge Stich’s successor, the Honorable Ploward J. Taylor, agreed to render a decision on the record, and rendered a judgment on January 31, 1962, finding the plaintiff totally and permanently disabled and ordering the defendant to *59 pay compensation at the rate of $30.00 per week for 400 weeks. No written reasons were assigned for judgment. The defendant appeals suspensively and devolutively from said judgment.
Since we are of the opinion that the defendant’s plea of prescription is conclusive in a determination of this matter, we will confine our recital of facts to such as hear materially and pertinently upon this point.
The pertinent facts are that on June 21, 1953, the plaintiff, Andrew Blackledge, while in the defendant’s employment as a bill poster, fell from a staging mounted upon his employer’s truck and suffered injuries. He was immediately hospitalized in Touro Infirmary, New Orleans, Louisiana, and treated by a company physician, Dr. Elmo J. Cerise, whose examination after X-Ray, disclosed that the plaintiff suffered a linear fracture of the left temple and frontal areas of the skull, a comminuted fracture of the distal portion of the right radius, a chipped fracture of the middle finger, a puncture wound on the forehead and a subcutaneous hematoma in the left eye with contusions and abrasions of the left ear, left shoulder, left hand and back. Eight days later, to-wit, on June 29, 1953, the plaintiff upon getting out of bed for the first time complained of seeing double upon looking down. Dr. Cerise thereupon summoned Dr. Albert Braunstein, an ophthalmologist for consultation, and later Dr. Howard Karr, a neurosurgeon. Dr. Braunstein’s examination revealed that the plaintiff was suffering from a partial paralysis of the inferior oblique muscle of the right eye, and he began on that date to treat the plaintiff. The report of Dr. Karr, the neurosurgeon, was negative.
The plaintiff was discharged from Touro Infirmary on July 2, 1953, and compensation payments were begun that day, and continued until September 8, 1953, at which time, on the advice of Dr. James T. Mc-Quitty, Dr. Cerise’s partner, the plaintiff returned to work and was assigned light duties in the defendant’s shop. The plaintiff testified that these duties consisted of washing neon glass and seeing that this glass was kept in its proper place. He also testified that for these duties he received $1.25 per hour, which was 25‡ more than the prevailing wage being paid in the defendant’s shop for this kind of work. Shortly thereafter, Dr. McQuitty recommended that the plaintiff’s duties be increased, but that there was to be no climbing as yet. On September 18, 1953, Dr. McQuitty again recommended that plaintiff’s duties be increased, but that he not be given full duty for one week yet. The plaintiff testified that he continued full time shop work until sometime in November or December, 1953, at which time he began working some three days a week as a bill poster outside the shop. According to his testimony he received. regular bill poster wages for those days in which he worked as a bill poster.
On December 21, 1953, Dr. Cerise discharged the plaintiff. Dr. Cerise, a witness for the plaintiff, testified that he considered that on this date the plaintiff was able to assume his regular duties as a bill poster, except insofar as any disability which Dr. Braunstein might find. Dr. Braunstein continued to treat the plaintiff until March 23, 1954, at which hime he discharged him. According to Dr. Braunstein’s testimony, at the time he discharged the plaintiff he had a slight diplopia on looking up and unto the left, but on looking down or straight ahead there was no diplopia. However, Dr. Braunstein felt that the plaintiff’s disability was extremely slight, and should not hinder his returning to his full duties as a bill poster.
The plaintiff assumed his full duties as a bill poster on April 9, 1954. On September 22, 1955, while putting up a bill board, the plaintiff became dizzy and nauseated and was forced to leave work and return home. He remained home September 23, 24, and 25 and was seen during this time by Dr. H. Oliver Ernst, a company doctor. After the day’s work on September 27, he was summoned to the company’s office and told that he was fired on the basis of advice *60 by Dr. Ernst that the plaintiff could not perform the climbing duties of a bill poster. The next day the plaintiff received a carbon copy of a separation notice on a regular form issued by the Division of Employment Security, which form bore the following notation :
“Upon advice of physician employee cannot perform duties of bill poster because of inability to climb.”
On September 26, 1956 the plaintiff filed this suit claiming permanent and total disability.
LSA-Revised Statutes 23:1209 provides:
“In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.”
In this case it is quite apparent from the record that whatever injury plaintiff sustained was on June 21, 1953, and any vertigo or nausea that developed from the accident was present at the time he was being treated by the doctors immediately after the accident. Assuming the vertigo and dizziness suffered by the plaintiff were the result of the accident, which the defendant denies, the effects of the accident were manifest immediately thereafter and,, therefore, under the statute, suit should have been instituted within one year after the last payment of compensation (September 8, 1953), as provided by the statute. Here, plaintiff’s petition was not filed until September 26, 1956, more than three years after the accident and after the date of termination of compensation payments. Any claim of the petitioner, therefore, had perempted before this suit was filed, and: petitioner was without right to file this action.
Plaintiff, however, seeks to escape the limitations set out in the statute by urging-that prescription was interrupted by one of the following circumstances:
“1. That the wages paid to the plaintiff by the defendant were paid to lull the plaintiff into a false sense of security with the fraudulent intention-of dismissing the plaintiff after prescription had accrued.
“2. That the wages paid the plaintiff were in lieu of, or in the nature of, compensation.”
We can find no merit in either contention. It is quite obvious from the testimony that, far from attempting to mislead plaintiff, Industrial Outdoor Displays acted in this matter entirely in accord with the-advice and instructions of the physicians-who treated plaintiff. There is not the slightest indication in the record that an. attempt was made to lull plaintiff into a false sense of security and then discharge him. Everyone considered that Black-ledge was fully able to do his job, and on the advice of the physicians treating him,, he was assigned to full duties in April, 1954, and performed them.
Plaintiff’s counsel makes much of the fact that all of the doctors who treated' the plaintiff were company doctors or doctors called by the company doctors for consultation, and all were paid by the company. While this fact is true, it is not enough, *61 standing alone, to disqualify their testimony, or cast suspicion on their professional character. A doctor’s first obligation is to his patient, and unless evidence is introduced to the contrary, it must be assumed that these men performed their obligations in accordance with their oath. There is not a scintilla of evidence anywhere in the transcript which in any way cast suspicion on any of the doctors who treated the plaintiff. On the contrary, the plaintiff seemed to be quite satisfied with the treatment he was receiving, and in fact, Dr. Cerise, one of the doctors who treated the plaintiff, had on several occasions treated various members of the plaintiff’s family.
With regard to the plaintiff’s second contention, to-wit: that wages were paid to plaintiff in lieu of compensation, we again can find no merit. At best, it might be argued that since plaintiff was receiving 25 ‡ more than the prevailing wage while he was assigned to the shop, these wages were gratuitous, and hence in lieu of compensation. However, there can be little doubt that after April 9, 1954, the time plaintiff assumed his full duties, he was doing a full day’s work for a full day’s pay. Black-ledge himself testified that he considered that after he returned to his full time duties he earned his wages.
The Court of Appeal of Louisiana for the First Circuit in the case of Abshire v. Cities Service Refining Corporation, La.App., 50 So.2d 307, affirmed a judgment maintaining a plea of prescription, holding that where regular wages paid to a claimant for workmen’s compensation, after he returned to work for the same employer, were actually earned by him and were commensurate with the services rendered, such wages were not in the nature of or in lieu of compensation, and payment of such wages did not interrupt the running of prescription. See also Perkins v. American Employers Insurance Co., La.App., 1st Cir., 53 So.2d 462 to the same effect.
Here there is ample evidence that the wages received by the plaintiff were commensurate with the services rendered. The plaintiff’s own testimony bears this out. Furthermore, the trial judge who rendered the judgment in this matter did not allow credit for the payment made to the plaintiff against the award given plaintiff, although it is well settled in the jurisprudence that payments in the nature of, or in lieu of, compensation are treated as compensation both for the purpose of interrupting prescription and also for credit against the employer’s compensation liability. Beloney v. General Electric Supply Company, La.App., 4th Cir., 103 So.2d 491, Walters v. General Electric Supply Company, La.App., 1st Cir., 119 So.2d 550.
Plaintiff’s counsel further argues that since the plaintiff performed his duties in pain and suffering the wages he earned during this period are considered to be in lieu of or in the nature of compensation, and hence they are also payments in that nature for the purpose of interrupting prescription. In support of his argument he cites the cases of Bynum v. Maryland Casualty Company, La.App., 1st Cir., 102 So.2d 547, Beloney v. General Electric Supply Company, La.App. 4th Cir., 103 So.2d 491, and Walters v. General Accident and Fire Assurance Corp., Ltd., La.App., 1st Cir., 119 So.2d 550, While we are in agreement with the principle land down by these cases, which in effect hold that the wages which the claimant receives for work performed in pain and suffering are deductible from his judgment for compensation, we can find no merit to counsel’s factual argument that the plaintiff here performed his duties in pain and suffering. According to plaintiff’s own testimony, from April 9, 1954 (the day he assumed his full duties as a bill poster) until he became ill on September 22, 1955, he consulted Dr. Cerise three times. Actually, Dr. Cerise testified that he treated the patient only twice, that on the plaintiff’s third visit he referred him to Dr. Ernst, who had again assumed his duties as the defendant’s company doctor. On each of these occasions the plaintiff’s complaints were the same — pains around the heart, and *62 periods of dizziness and nausea once or twice a month, which periods he testified lasted some several hours and occurred either at work, home, or play. Nowhere in the transcript does the plaintiff testify that he worked in pain and suffering'. We do not believe that these infrequent complaints of plaintiff establish that plaintiff, who worked for some sixteen months as a full time bill poster after his accident, performed his duties in pain and suffering.
For the reasons assigned, this court considers that the exception of prescription of one year is well founded, and the judgment of the lower court is reversed and the exception is maintained, and plaintiff’s suit is dismissed at his costs.
Judgment Reversed and Rendered.