CULPEPPER, Judge.
The plaintiff employee sues for workmen’s compensation benefits. The district judge sustained defendant’s exception of prescription, on the grounds that suit was filed more than one year after the last payment of compensation. (LSA-R.S. 23 :- 1209) From a judgment dismissing his suit, plaintiff appealed.
The essential issue is whether wages paid by defendant to plaintiff after his return to work were payments in lieu of workmen’s compensation, interrupting prescription. A recent statement of the applicable law is found in Madison v. American Sugar Refining Company, 243 La. 408, 144 So.2d 377 (1962) as follows:
“The basic test for determining whether they are made in lieu of compensation is whether the wages paid after the injury are actually earned. This, of course, is determined by the facts and circumstances of a particular case. The fact that the services performed after the injury are similar, or dissimilar, to the services performed before may be relevant to the question-of whether the wages are actually earned, but it is not decisive of it.”
In the instant case Ledoux was employed as a laborer in defendant’s shipyard. He did heavy work, such as pumping out boats, working in the blacksmith shop and the carpenter shop, chipping paint, etc. On-May 1, 1959 plaintiff strained his back while at work. As a result of this injury, and a reaggravation thereof while at work in July of 1959, it was finally necessary to perform a laminectomy on April 8, 1960. On January 9, 1961 the treating physician, Dr. George B. Briel, a specialist in orthopedics, recommended to the employer that plaintiff be returned to work, performing light duties at first until his muscles strengthened sufficiently for his return to his regular duties. Hence plaintiff returned to work and compensation payments were stopped in January of 1961.
On his return to work plaintiff was assigned to his former duties as a laborer in the shipyard. He performed the work satisfactorily but had to wear a back brace and experienced difficulty in bending or heavy lifting. During this period of time he continued to see the doctor, once a week at first, then twice a month, and then once a month. On these occasions he did not report to work at 7:30 a. m., the usual starting time, but would get to work at 9:00 a. m. or 9:30 a. m. No reduction in pay was made for time missed in going to the doctor, but the evidence shows that no employee was ever docked for such time lost, provided he paid his own transportation, as did the plaintiff in this case. All during this time plaintiff was working as a laborer, he received the same wages which he had been paid before the accident, and which all of the other laborers at the shipyard were paid, that is, the minimum Federal Wage Scale of $1, $1.15 and $1.25 per hour, effective during different periods of his employment.
*797 Some'time during 1960 the regular cook at the shipyard died. He was first replaced by John Trahan, but since Trahan was also qualified as a boat captain and a welder, he was transferred to a boat. In November, 1961 plaintiff was offered, and accepted, the job as cook.
Plaintiff testified- his duties as a cook were lighter than those as a laborer. However, when not busy in the cook shack, plaintiff did perform other "duties' around the shipyard, in the carpenter shop, on the boats, etc. when so requested by his superiors. He carried out all of these duties satisfactorily, working full time 6 or 7 days a week on the same schedule as the other shipyard employees. He received the same wages as a cook that he did in his previous work as a laborer, which was also the same wage that the previous cooks had received. Plaintiff and his supervisors both testified he fully earned his wages. It is admitted that there was never any express discussion, understanding or agreement between plaintiff and his employer that the wages paid were in lieu of workmen’s compensation benefits.
Plaintiff worked thus as a cook until May of 1964, when the kitchen was closed due to a reduction in the number of employees. When this suit was filed on August 11, 1964, more than five years had elapsed since the date of the accident on May 1, 1959; more than four years had elapsed since the injury had fully developed and plaintiff became totally disabled, as a result of the laminectomy on April 8, 1960; and over three years had elapsed since workmen’s compensation payments were stopped in January of 1961.
The district judge cited Griffin v. Liberty Mutual Insurance Co., La.App., 131 So.2d 153; Gary v. Fidelity & Casualty Company of New York, La.App., 158 So.2d 866 and Blackledge v. Industrial Outdoors Displays, Inc., La.App., 145 So.2d 58, which follow essentially the law as quoted hereinabove from Madison v. American Sugar Refining Co, 243 La. 408, 144 So.2d 377. He then concluded that even though plaintiff’s duties as a cook may have been lighter,; and were certainly dissimilar, as compared, to those he performed as a laborer, the-plaintiff clearly earned his wages as a cook and there was no express or implied agreement that such wages were in lieu of workmen’s compensation payments. Thus there was no interruption of prescription.
 Plaintiff .argues first that the district judge did not give sufficient weight to the fact that plaintiff’s duties as a cook were lighter than those he performed as-a laborer before the accident. Plaintiff cites Scalise v. Liberty Mutual Insurance Co, La.App, 84 So.2d 88 (1st Cir.1955), and particularly notes that portion of the-opinion which states:
“Under these circumstances, we do not believe as a matter of law that the employee, Scalise, was fully earning his-wages. Both he and his employer state-the wages paid were not commensurate with services rendered. Further, it is-not what they contend the man is-worth that is determinative herein, but it is a comparison of the nature of the duties and the pay prior to and subsequent to the accident that determines whether the employee is receiving wages or payments in lieu of compensation. When the wages paid a disabled employee are more than com-mensúrate with the services rendered and the employee is not actually earning all of his pay, then there is a reasonable inference that the wages paid were intended as payments in lieu of or in the nature of compensation.”
We have no quarrel with the Scalise case, but a mere reading of the above quotation therefrom shows the facts there were admittedly entirely different from the present matter. Scalise was a welder who injured his leg and on return to work was assigned to lighter non-climbing duties, but was still paid his former wage of $1.20 per hour, because he had worked for this *798 employer for 20 years. Both Scalise and his employer testified that although he was paid $1.20 an hour, his services were actually worth only 85 ‡ to 90$ per hour. Thus Scalise admittedly was not earning his wages and they were considered to be in lieu of workmen’s compensation.
Certainly the Scalise case is not authority for the proposition that if the work performed after the accident is, by comparison, lighter than the duties performed prior to the accident, an inference is necessarily implied that the wages were in lieu of compensation. As stated in the Madison case, supra, a comparison of the duties before and after the accident “ * * may be relevant to the question of whether the wages are actually earned, but it is not decisive of it.”
In this regard we note that actually the facts of the Madison case, supra, were very similar to the present matter. Madison was a common laborer who stacked sacks of sugar in boxcars and worked as a car bracer and lift operator. He hurt his back and thereafter was unable to do this heavy lifting but was retained at much lighter work and at only 1$ per hour less pay. The court held that although the new work was lighter and of a dissimilar nature the wages were fully earned and were therefore not in lieu of workmen’s compensation.
Plaintiff also argues that the payment to plaintiff of wages for the time spent visiting the doctor, twice a month for the first few months and then once a month thereafter, averaging 11/2 to 2 hours per visit, constituted a gratuity which must be considered as payment of wages in lieu of compensation. As noted above, the evidence shows that none of plaintiff’s co-employees were docked for time spent visiting the doctor. We do not think that this fact, even when considered with the other circumstances, implies an agreement that these wages were in lieu of compensation, Certainly this does not alter the basic conclusion that plaintiff fully earned his wages as a cook.
The trial judge correctly found as a fact that “certainly no wages were paid to lull plaintiff into a false sense of security with any intention to discharge him as soon as prescription accrued. Plaintiff returned to his regular work in January of 1961, and his employment was terminated more than 3 years later because the job as cook was no longer necessary.” Clearly there was no “lulling” of the employee here to stay at work until prescription had elapsed. Actually, plaintiff does not stress the “lulling” doctrine in his appellate brief in this court.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.