250 So.2d 118 (1971)
Jules HEYMANN, Jr.
v.
DIXIE LEASING CORPORATION and its Insurer, U. S. Fire Insurance Company.
No. 4437.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1971.
Rehearing Denied July 15, 1971.
*119 Occhipinti, Occhipinti, Tamberella, Vosbein & Everhardt, A. R. Occhipinti and George M. Leppert, New Orleans, for plaintiff-appellant.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, James C. Murphy, Jr., and L. S. Charbonnet, III, New Orleans, for defendants-appellees.
Before SAMUEL, GULOTTA and STOULIG, JJ.
SAMUEL, Judge.
Plaintiff was injured on May 16, 1966 while working for Dixie Leasing Corporation. He returned to work in a wheel chair approximately 25 days after the accident and continued working until his employment was terminated by Dixie about twelve months later. On July 14, 1967 he instituted this suit against Dixie and its *120 compensation insurer, U. S. Fire Insurance Company, for maximum total and permanent disability benefits and medical payments under the Louisiana Workmen's Compensation statutes (LSA-R.S. 23:1021 et seq.). The defendants answered, denying liability, pleading prescription and alternatively averring payments for medical treatment in the amount of $2,506.93.
Following trial on the merits judgment was rendered in favor of the defendants sustaining their plea of prescription and dismissing plaintiff's suit. Thereafter plaintiff was granted a new trial to permit the introduction of additional evidence. Following the second hearing the court considered the additional evidence insufficient to warrant any change and rendered judgment, similar to that originally rendered, maintaining the plea of prescription and dismissing the suit.
Plaintiff has appealed. In this court he contends the wage payments made to him by Dixie after the accident, or at least a part thereof, were in the nature of gratuities in lieu of compensation and therefore such payments interrupted prescription. This is the primary question presented by the appeal.
In pertinent part LSA-R.S. 23:1209 provides that all claims for compensation resulting from personal injury shall be forever barred unless within one year after the accident the parties have agreed upon compensation payments to be made or proceedings for compensation have been begun; and where compensation payments have been made the limitation shall not take effect until the expiration of one year from the time of making the last payment. As this suit was filed some fourteen months after the accident, plaintiff bears the burden of proving his claim has not prescribed.[1]
The general rule is that when the services rendered by a disabled employee following a compensable accident were not commensurate with the amount of wages paid and the employee did not actually earn all of his pay, such wages will be deemed to have been paid in lieu of compensation and will interrupt the one year prescription provided by LSA-R.S. 23:1209. The basic test is whether the wages paid subsequent to the injury were actually earned. The mere fact that the duties before and after the accident were similar or dissimilar, heavier or lighter, is relevant but not determinative of the issue. And whether the wages were actually earned is determined by the facts and circumstances of each particular case.[2]
Evidence relative to the material non-medical facts consists of testimony given on behalf of the plaintiff by the plaintiff himself and another former Dixie employee and, for the defendants, by a Dixie vice president at the time of the accident. Those facts are not in serious dispute.
Dixie was engaged in the business of renting and leasing automobiles and trucks, the term "renting" being applied in the trade to short-term (daily or weekly) rentals and "leasing" to longer contracts. Plaintiff was hired as a lease salesman in 1964. Before the accident his principal duty involved outside direct contact with prospective customers whose identity was established from leads obtained through advertising in the yellow pages, radio, newspapers or dealership affiliations. In the performance of this duty he drove an automobile which Dixie provided for his use. In addition, on one day each week he *121 opened the office at 7 a. m. and remained until relieved at 10 a. m. During that time he handled phone calls and rental or short-term sales. He also worked at the counter every other Saturday. His salary was $525 per month, plus commissions of $25 for each lease he sold and 2% of Dixie's profits on each sale, as contrasted with $90 per week, or $390 per month, paid to a fellow employee who sold rentals and worked only in the office.
Plaintiff was an amputee, having lost his right leg in a childhood accident, but by the use of an artificial limb he had overcome the handicap to the extent that it was not noticeable even when walking. He sustained the principal injury in suit, a fracture of the left thigh bone, while he was a passenger in an automobile being test driven by a prospective customer. He spent 11 days in a hospital, remained at home for two weeks, and then returned to work in a wheel chair. He worked for approximately three months while in the wheel chair and nine months while on crutches. Although he was not confined to the wheel chair on a full-time basis, during those first three months he could not walk to any extent, especially up and down stairs, or get in or out of a car without extreme difficulty and therefore, with one exception, was unable to make outside calls until he was on crutches. The exception occurred when a former superior drove him to one call relative to a prospective lease.
Plaintiff's employment was terminated by Dixie in June, 1967 because of a need to reduce overhead. No replacement was hired and, although the record does not reveal the exact date, sometime prior to the first day of trial on December 17, 1969 Dixie went out of business. Following the accident plaintiff received the same salary, $525 per month plus commissions, he had received before the accident. In his first year with Dixie (1964-65) he sold sixteen leases as compared with twenty-nine in the year preceding the accident (1965-66) and nineteen in the year following the accident (1966-67). He did sell several leases during the first three months after the accident. Subsequent to a second surgical procedure in 1968 he obtained other employment involving the same duties he had performed for Dixie prior to the accident.
We do not consider the number of leases sold by plaintiff in the year following the accident as determinative of whether he actually earned his full salary during that time. The record is devoid of any evidence relative to the manner in which those leases were sold and it is quite possible at least some of them may have been renewals of previous sales. What we do consider as important and determinative is that during the first three months while he was in a wheel chair plaintiff could not make outside calls, obviously the major part of the work for which he was paid prior to the accident. Disregarding the additional income involved in commissions, and considering only the $525 per month he was paid as a lease salesman as compared with the $390 monthly salary Dixie paid rental salesmen working only in the office, we are of the opinion that during those first three months plaintiff did not actually earn all of his pay.
Thus, under the authorities above referred to, payment of the full $525 salary interrupted the running of prescription at least for the first three months after his return to work. As the accident occurred on May 16, 1966 and plaintiff returned to work approximately 25 days later, he received the unearned portion of his salary until the early part of September, 1966 and the filing of suit on July 14, 1966 was timely.
Medical evidence relative to the injury in suit was given by two orthopedic specialists, Dr. H. R. Soboloff on behalf of plaintiff and Dr. Irvin Cahen for the defendants. Their testimony reveals an orthopedic operation (intramedulla nailing) was performed by Dr. Cahen on the date *122 of the accident. Following plaintiff's discharge from the hospital a wheel chair was recommended, although not on a full time basis, and as his condition improved he was placed on crutches and then used a cane. The fracture healed and the pin was removed by a second surgical procedure on March 23, 1968. Although plaintiff was discharged by Dr. Cahen on June 6, 1968, he returned the following year with complaints of persistent pain on prolonged walking or standing.
The two doctors found evidence of osteoporosis (softening of the bone) around the knee due to disuse and a residual of patella femoral crepitation, both attributable to the accident. They agreed plaintiff suffered mild pain after each day's use of the legs. Dr. Soboloff was of the opinion plaintiff had a permanent disability of 10% of the left leg because he continued having symptoms so long after the accident (Dr. Soboloff's examination was made July 18, 1969) and subsequent to a gradual return to activity. He felt there would not be any further significant improvement. Dr. Cahen was of the opinion that continued activity would reduce plaintiff's symptomotology. Inasmuch as both doctors found the same residual for so long a period after the accident, we conclude a permanent disability of 10% of the left leg has been established.
It is quite clear plaintiff is not entitled to recover total and permanent disability benefits. Although he does suffer some mild pain at the end of each work day, as he is able to perform the work he did prior to the accident, he is not totally disabled. However, it is equally clear he is entitled to recover compensation for partial loss of use or function as provided in LSA-R.S. 23:1221(4) (h) (o) which read:
"(4) In the following cases the compensation shall be as follows:
(h) For the loss of a leg, sixty-five per centum of wages during one hundred seventy-five weeks.
(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member."
The record does not reveal the exact amount of wages plaintiff was receiving at the time of the accident. As has been pointed out, it does reveal he was paid $525 per month plus commissions of $25 for each lease sold and 2% of Dixie's profit on each sale. But we have no means of determining what the 2% of profit amounted to. While there is some evidence plaintiff had a drawing account of $160 per week, he has not proved with legal certainty that his weekly salary prior to the accident was any more than $137.02.[3]
Under the above quoted subsections of LSA-R.S. 23:1221 plaintiff is entitled to compensation at the rate of 10% of 65% of his wages during 175 weeks.[4] Sixty-five per cent of his weekly wage of $137.02 amounts to $89.06 and 10% of that figure amounts to $8.91. However, under LSA-R.S. 23:1202[5] plaintiff is entitled to *123 the minimum compensation of $10 per week for 175 weeks, a total of $1,750.
There is no evidence in the record substantiating plaintiff's claim for medical expenses. To the contrary, the only evidence on that subject is the testimony of plaintiff himself to the effect that he has been presented with no bills for such expenses and that the same apparently have been paid by the defendant insurer. Therefore the award is limited to compensation alone. We also award interest from date of judicial demand until paid in accordance with the prayer in plaintiff's petition.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that the plea of prescription be overruled and that there be judgment in favor of the plaintiff, Jules Heymann, Jr., and against the defendants, Dixie Leasing Corporation and U. S. Fire Insurance Company, in solido, for compensation at the rate of $10 per week for a period of 175 weeks, or a total of $1,750, with legal interest thereon from date of judicial demand until paid; defendants-appellees to pay all costs in both courts.
Reversed.
NOTES
[1] Aucoin v. Fidelity & Casualty Company of New York, La.App., 217 So.2d 506.
[2] Madison v. American Sugar Refining Company, 243 La. 408, 144 So.2d 377; Daigle v. Liberty Mutual Insurance Company, La.App., 205 So.2d 507; Mella v. Continental Emsco, La.App., 189 So.2d 716; Ortego v. Cabot Corporation, La. App., 180 So.2d 598; Deen v. Halliburton Oil Well Cementing Company, La.App., 180 So.2d 584; Ledoux v. William T. Burton Company, La.App., 171 So.2d 695; Scalise v. Liberty Mutual Insurance Co., La.App., 84 So.2d 88.
[3] Without considering the 2% commission, the year preceding the accident he earned $525 per month ($6,300 for the 12 month period) plus $725 ($25 for each of 29 leases sold), a total of $7,025 for the year or $137.02 per week.
[4] Hall v. Pipe Line Service Corporation, 233 La. 821, 98 So.2d 202; Ventress v. Danel-Ryder, Inc., La.App., 225 So.2d 765; Allen v. Insurance Company of North America, La.App., 216 So.2d 400.
[5] The 1968 amendment is inapplicable in the instant case.