349 So.2d 408 (1977)
Eddie MATTHEWS
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 8201.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1977.
Rehearing Denied September 8, 1977.
Writ Refused November 4, 1977.
Jules A. Fontana, Jr., New Orleans, for plaintiff-appellee.
Floyd F. Greene, New Orleans, for defendant-appellant.
Before SAMUEL, SCHOTT and BEER, JJ.
SAMUEL, Judge.
Plaintiff filed this suit against New Orleans Public Service, Inc., seeking to recover benefits for total and permanent disability under the Louisiana Workmen's Compensation *409 Statutes.[1] Plaintiff's petition was filed on November 26,1974, and he alleged therein his disability resulted from back injuries sustained in the course of his employment with defendant on May 23, 1967 and on some unknown date in 1971.
Defendant answered, denying plaintiff's allegations. Before completion of the trial, defendant also filed an exception of the prescription of one year.
After a trial on the merits, judgment was rendered in favor of plaintiff, awarding him compensation benefits for total and permanent disability at the rate of $65 per week for 400 weeks commencing July 24, 1974 and maximum medical benefits payable under the statute. The trial judge did not give written or oral reasons for judgment and the judgment contains no reference to defendant's exception of prescription.
On May 23, 1968, plaintiff injured his back while repairing gas pipe in an excavation. The accident was reported, and plaintiff was seen by defendant's physician. Plaintiff was treated and discharged in approximately 24 days as fit to return to regular work. There is some vague evidence regarding a possible reinjury of plaintiff's back later in 1968 while he was lifting a heavy hammer or maul, and defendant's records reflect plaintiff was off work from October 11, 1968 through the first week in November, 1968. In 1969 plaintiff missed several days work. In 1970 he missed 28 days work, and in 1971 he missed 21 days. From early March, 1972 until July 24, 1974 plaintiff did not work at all and there is evidence indicating that during this period he had various illnesses, symptoms and complaints which were not job related. His employment was terminated July 31, 1974.
The only evidence of an injury or reinjury to plaintiff's back in 1971 was the testimony of plaintiff himself. He testified that on some unknown day in 1971 (he occasionally stated the year to be 1972), he fell twice, once while performing work at the home of one of his superiors and shortly thereafter when his feet slipped out from under him and he landed on his buttocks. No report of this accident was made to defendant, and plaintiff did not see the company doctor for this accident. In addition, none of plaintiff's four witnesses, two fellow laborers and two foremen, had any knowledge of a second accident, and one of his fellow workers testified plaintiff worked regularly after the 1968 accident until 1972.
Defendant did not make any payments to plaintiff designated as workmen's compensation benefits. From 1968 until plaintiff's termination in July, 1974, defendant paid plaintiff full wages irrespective of the number of absences or the cause thereof. Evidence shows plaintiff was paid full wages while disabled in 1968 and also was paid full wages during the subsequent time, even when he was absent because of jury duty requirements or because of illness not related to his employment.
The prescriptive period in workmen's compensation is set forth in R.S. 23:1209 as follows:
"In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
Initially, we note the last sentence of the above statute does not apply in this case *410 because the injury in 1968, as well as plaintiff's version of the injury in 1971, either resulted at the time of, or developed immediately after, the claimed accidents. We also note that since plaintiff's suit was filed on November 26, 1974, he must rely on some suspension or interruption of the one year prescriptive period in order to maintain an action for either the 1968 or the 1971 accident. Plaintiff argues that payment of his wages in lieu of compensation interrupted prescription.
Our settled jurisprudence is that payment of wages in lieu of compensation interrupts prescription just as compensation payments would do.[2] The test to determine if wages were paid in lieu of compensation is whether the wages are actually earned by the employee.[3] In making that determination, the similarity or degree of difficulty of services performed by the employee before and after the accident are relevant but not conclusive of the issue.[4] If the injured employee actually earns the wages, they are not in lieu of compensation and do not interrupt prescription even if the employee worked in pain.[5]
From 1972 until mid 1974 plaintiff did not work, and payment of wages during this period could be deemed as nothing other than wages in lieu of compensation. However, if plaintiff's claim had prescribed before commencement of payments in 1972 when no work was performed, then such payments would have no legal effect on plaintiff's claim. Examining first plaintiff's accident of May 23, 1968, he received wages even though he did not work for 24 days immediately thereafter. Such wages would be in lieu of compensation because he performed no services in return for them. Considering the matter in a light most favorable to plaintiff, and assuming his absence of approximately 3½ weeks beginning October, 1968 were caused by his 1968 injury, plaintiff then resumed work and performed what the record indicates to be the substantial duties of his employment. Consequently, plaintiff would have had to file suit within one year from his absence in October, 1968 in order to interrupt prescription on the 1968 injury. This was not done, and in our view that claim has prescribed.
After the 3½ weeks absence commencing in October, 1968, plaintiff worked regularly in substantially the same job until March, 1972. There is testimony he was afforded light duties prior to the time in 1972 when he stopped working completely. However, the record does not indicate whether the light duties would have called for the same pay had they been performed by someone who had not complained of back injuries. Consequently, it is impossible to reach a determination of whether the duties performed by plaintiff, such as painting and pipe repair work in defendant's shop, were commensurate with his wages. After being placed on light duty, plaintiff complained he could not perform these duties and asked to be transferred back to work in the field. His request was granted, and at this time he concluded he could not perform the work and commenced his 2½ year period of paid inactivity.
This paid inactivity, being wages in lieu of compensation, might help plaintiff had he proved the occurrence and date of a 1971 or later second accident and injury. But there is insufficient evidence in the record to conclude he did in fact sustain such an accident and injury. The only evidence relating thereto is his own testimony and, to a very limited extent, the testimony of a fellow worker, Mike McKay. Plaintiff's testimony is hopelessly confused by his inability to relate facts to the time periods in which he says they occurred. On some occasions he stated the later accident occurred some time in 1971, at other times he stated it occurred some time in 1972, and at still other times he was not at all sure when it *411 occurred. He did testify that Mike McKay, a member of his crew at the time, had witnessed the second accident in 1971. However, he also testified that as a result of that second accident he saw and was treated by Dr. Bernard Richmond, who sent him to Dr. Ray J. Haddad, Jr.
Mike McKay testified that in 1972 plaintiff told him he (plaintiff) had reinjured his back, but McKay also stated he had not seen any accident other than the one that occurred in 1968. Dr. Richmond did not testify. Dr. Haddad did testify, stating he had seen plaintiff on two occasions, in November, 1970 and August, 1974 and on neither occasion was he told by plaintiff of any accident, injury or reinjury other than the 1968 accident. Dr. Gernon Brown, Jr., who saw plaintiff once on June 26, 1972 when plaintiff was referred to him by Dr. Richmond, testified the only accident mentioned in his records is the one which occurred in 1968, so that plaintiff made no complaint about an accident in 1971 or 1972. Dr. Irvin Redler saw plaintiff on two occasions, November 28, 1972 and February 12, 1974, at which times he was told by plaintiff only about an accident in 1968 and nothing about a subsequent accident.
Since the 1968 accident clearly prescribed no later than the first week in November of 1969, and since there is no adequate proof of an accident and injury in 1971, this suit filed in November, 1974 cannot interrupt prescription on plaintiff's claims which had prescribed prior to that filing.
Plaintiff further argues that defendant lulled him into a false sense of security and caused him not to file suit timely because it paid him full wages irrespective of his presence or absence on the job from 1968 through mid 1974. However, to suspend prescription an injured plaintiff must show as a matter of law that the words, actions, or inactions of his employer were designed to and did in fact lull the plaintiff into a false sense of security and inaction.[6]
In the present case it is clear the policy of the defendant was to pay full wages irrespective of the reason for an employee's absence. No statement was ever made to plaintiff, either orally or in writing, relating the payments he received to workmen's compensation benefits. On the contrary, at one point the company physician told told plaintiff he could not see his because more than a year had passed since the day of the 1968 accident. Moreover, defendant's policy of paying full wages applied to all employees, not just plaintiff. Thus, it cannot be said defendant's payment of full wages for an extended period of time was designed to lull plaintiff into a false sense of security and inaction.
Plaintiff's suit having prescribed, the judgment awarding him disability benefits must be annulled and set aside.
For the reasons assigned, the judgment appealed from is annulled and set aside, the exception of prescription is maintained, and plaintiff's suit is dismissed at his cost in both courts.
ANNULLED AND SET ASIDE; SUIT DISMISSED.
NOTES
[1] LSA-R.S. 23:1021, et seq.
[2] Harrell v. Travelers Insurance Company, La. App., 255 So.2d 410.
[3] O'Quain v. Rockwood Insurance Company, La.App., 335 So.2d 85; Landry v. Ferguson, La.App., 264 So.2d 746; Ledoux v. William T. Burton Company, La.App., 171 So.2d 795.
[4] Heymann v. Dixie Leasing Corporation, La. App., 250 So.2d 118.
[5] Bell v. Gulf Insurance Company, La.App., 313 So.2d 277.
[6] See Williams v. Red Barn Chemicals, Inc., La.App., 188 So.2d 78. Compare Ray v. City of New Orleans, La.App., 284 So.2d 83, where a firefighter was held mislead into thinking sick leave benefits included workmen's compensation benefits so that the prescription of one year did not apply.